UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. S1-4:21 CR 00563 MTS NCC-1 |
| LARENZO SMITH, a/k/a "Wookie," | ) ) ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Larenzo SMITH, represented by defense counsel Bill Ekiss, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty **to the lesser included offense** contained in Count One of the Indictment, the government agrees that no further federal prosecution will be brought in this

Page 1 of 17

District relative to the defendant's criminal drug trafficking activity, as reflected in both the Indictment and this Agreement, of which the Government is currently aware.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties understand that the Court is neither a party to nor bound by this joint recommendation or the Guidelines recommendations agreed to in this document.

The defendant also agrees, pursuant to the guilty plea to Count One, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but limited to the following items:

a. Residence located at 8173 Martin Luther King Boulevard, St. Louis, Missouri 63140;
b. Residence located at 838 Rolwes Avenue, St. Louis, Missouri 63135;
c. 2014 Jeep SRT, VIN: 1C4RJFDJ4EC368035, seized at 10307 Forest Brook Ln. apt. G, Olivette, MO 63146, on October 14, 2021;
d. 2004 Chevrolet SS Pickup VIN: 2GCEK19NX41148932, seized at 2140 Flordawn Dr. apt. 10, Florissant, MO 63031, on October 14, 2021;
e. 2016 Kenworth, T680 Semi-Tractor, VIN: 1XKYDP9X5GJ121986, seized at 11234 Larimore Rd., St. Louis, MO 63138, on October 14, 2021;
f. 2016 Utility Trailer for Semi, VS2RA, VIN: 1UYVS2532GU452101, seized at 11234 Larimore Rd., St. Louis, MO 63138, on October 14, 2021;
g. FN Herstal, 509, 9mm cal., #GKS0027068, seized at Chambers Rd. & Clairmont Dr., St. Louis, MO 63136, on October 14, 2021;
h. Smith & Wesson, M&P, 9mm, #NES1547, seized at 8173 Martin Luther King Blvd., Kinloch, MO 63140

     i.    Sun City Machinery, Stevens 320, 12 gauge shotgun, #140450H, seized from 4925 Beacon Ave., St. Louis, MO 63120

     j.    Davis Industries, D25 Derringer, .25 cal., #360829, seized from 4925 Beacon Ave., St. Louis, MO 63120

     k.    $12,750 seized from 4925 Beacon Ave., St. Louis, MO 63120, on September 4, 2021;

     l.    Glock, 23, 40 cal., #DVK249US, seized from 4033 Cranberry Ln, St. Louis, MO 63121;

     m.    Taurus International, Judge, .45/410 cal., #ABK045509, seized from 10188 Clairmont Dr., St. Louis, MO 63136;

     n.    FN Herstal, Five-Seven, 5.7 cal., #386370100, seized from 10188 Clairmont Dr., St. Louis, MO 63136;

     o.    Unknown Manufacture/Model Rifle, #DB-1811370 10188, seized from Clairmont Dr., St. Louis, MO 63136;

     p.    Carrera Y Astelarra, Shotgun, #20CB-00040 10188, seized from Clairmont Dr., St. Louis, MO 63136;

     q.    Browning, 12ga, Shotgun, #63886, seized from 10188 Clairmont Dr., St. Louis, MO 63136;

     r.    Glock, 40, 10mm, #BATU342, seized from 10537 Repose Dr., St. Louis, MO 63137;

     s.    Savage, 12 gauge sawed off shotgun, Unknown S/N 1149, seized from Reale Ave., St. Louis, MO 63138, October 14, 2021;

     t.    $33,394 U.S. Currency seized from 10307 Forest Brook Ln. apt. G, Olivette, MO 63146, October 14, 2021;

     u.    $1,951.00 U.S. Currency seized from 10416 Duke Dr., St. Louis, MO 63136, October 14, 2021;

     v.    1990 Chevrolet SS 454, VIN: 1GCDC14N7LZ183272, seized from 1002 Hanley Industrial Ct., St. Louis, MO 63144, October 25, 2021;

     w.    2011 Dodge 3500 Flatbed, VIN: 3D73Y4CL6BG621430, seized from 10416 Duke Dr., St. Louis, MO 63136, October 14, 2021;

     x.    Ruger, LCP, .380 cal., #372405801, seized from Chambers Rd. & Chambers Hill Dr., St. Louis, MO 63136, September 21, 2021;

     y.    Assorted and miscellaneous jewelry, clothes, shoes, and bags seized from 10307 Forest Brook Ln. apt. G, Olivette, MO 63146, October 14, 2021; and

     z.    Miscellaneous Magazines and Ammunition.

### 3. ELEMENTS:

As to the lesser included offense contained in Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846 and admits there is

a factual basis for the plea, and further, fully understands that the elements of the crime are as follows:

Beginning on an unknown date and continuing for a period of time, including October 14, 2021 and continuing up to the date of this Indictment and after, with the exact dates unknown, within the Eastern District of Missouri, and elsewhere,

    **(i)**    two or more persons reached an agreement or came to an understanding to possess with the intent to distribute and distribute cocaine base, a Schedule II controlled substance;

    **(ii)**    the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect;

    **(iii)**    at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and

    **(iv)**    the agreement or understanding involved 28 grams or more of cocaine base.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In November 2020, the Bureau of Alcohol, Tobacco, Firearms, and Explosives initiated an investigation into drug trafficking activity taking place in the Castle Point neighborhood of North

St. Louis County, as well as surrounding neighborhoods.

The investigative team identified the HUGHES Drug Trafficking Organization (DTO), which included numerous members of the HUGHES family and also close acquaintances of the family, including but not limited to co-defendants David HUGHES, Otis HUGHES, Curtis HUGHES, Howard HUGHES, Demetrius HUGHES, Tajuan WILSON, Keith WILLIAMS, Christile HUGHES-DILLON, and Defendant Larenzo SMITH. This investigation included substantial physical surveillance, the use of pole cameras, the use of precision location information warrants, the use of GPS tracker warrants, and the use of confidential informants to conduct controlled purchases of narcotics from various member of the DTO. Moreover, the investigation lead to the use of judicially authorized wire and electronic monitoring (wiretaps). A total of 6 cellular telephones used by various members of the DTO were monitored throughout the investigation. This included two cellular telephones initially believed to be utilized by co-defendant Christile HUGHES-DILLON. However, one of these phones, which belonged to HUGHES-DILLON, was primarily used by Larenzo SMITH.

The monitoring of these phones and the associated physical and/or pole camera surveillance conducted by investigators revealed a substantial drug trafficking operation, where the HUGHES DTO was distributing large quantities of "crack" cocaine base, as well as fentanyl, throughout St. Louis County and within the Eastern District of Missouri. Moreover, the investigation revealed that members of the DTO regularly carried, distributed, and sold firearms in furtherance of their drug trafficking enterprise.

Investigators have intercepted various members of the DTO openly discussing the possession and use of firearms, as well as transferring firearms to other members of the DTO. This

has taken place on numerous occasions throughout the investigation. Moreover, Defendant is closely tied to co-defendant Christile HUGHES-DILLON. Throughout the investigation, Larenzo SMITH and HUGHES-DILLON have been observed consistently in the same place and regularly conducting the business of the DTO together, including narcotic deliveries to numerous customers. These observations were corroborated through intercepted wire communications, in which Larenzo SMITH and/or HUGHES-DILLON would communicate with customers or suppliers and would arrange for subsequent transactions.

On October 14, 2021, law enforcement executed approximately 14 search warrants, including 10 search warrants on various residences and businesses utilized by the HUGHES DTO. This includes the address regularly used by Larenzo SMITH and HUGHES-DILLON. Investigators also searched Tajuan WILSON's residence, who is the primary source of supply for the HUGHES DTO and has been repeatedly intercepted over the wire conducting drug deliveries to various members of the DTO. At WILSON's residence, investigators seized, among other items, approximately 1 kilogram of cocaine base and 1 kilogram of cocaine. Investigators seized approximately 7-8 firearms from various locations utilized by members of the DTO.

This same date, investigators located Larenzo SMITH at a residence at 8173 Dr. Martin Luther King Boulevard, which was also searched. This is the home of Otis HUGHES, a high-ranking member of the HUGHES DTO and the father of Christile HUGHES-DILLON. Numerous controlled purchases of narcotics, including cocaine base and fentanyl, were conducted at this residence throughout the investigation. Keith WILLIAMS, who worked directly for Otis HUGHES, would operate out of this house and conduct narcotics sales with confidential sources and/or undercover investigators. Keith WILLIAMS also sold a firearm to an ATF undercover

agent out of this house.

When Larenzo SMITH was arrested at 8173 Dr. Martin Luther King Boulevard., co-defendants Christile HUGHES-DILLON, Keith WILLIAMS, and Sean GRAY were also present. HUGHES-DILLON and SMITH were discovered in the living room. In the living room, investigators also discovered approximately 22 grams of cocaine base, along with a pill bottle with 10-20 pills. Investigators observed WILLIAMS attempt to discard narcotics in the bathroom, but were able to prevent him from doing so. WILLIAMS had approximately one-half ounce of suspected cocaine/cocaine base.

The parties agree that Defendant knowingly and intentionally entered into an agreement with one or more persons, both known and unknown, to distribute and possess with the intent to distribute controlled substances, including but not limited to cocaine base. The parties further agree that the quantity of controlled substances, including cocaine base, attributable to Larenzo SMITH is difficult to ascertain with absolute certainty. The parties therefore agree, based upon drug seizures, physical surveillance, intercepted calls, and the totality of the investigation, to hold Larenzo SMITH accountable for approximately 1 kilogram of cocaine base, and 1 kilogram of cocaine.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 40 years, a fine of not more than $5,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 4 years. **The defendant also fully understands**

that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least 5 years.

### 6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

#### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 32, as found in Section 2D1.1(c)(4). The parties agree that the quantity of cocaine and cocaine base for which the Defendant is accountable, including relevant conduct, is more than 3,000 kilograms converted drug weight, and less than 10,000 kilograms converted drug weight, resulting in the agreed Base Offense Level. This is based on an agreed upon 1 kilogram of cocaine, and 1 kilogram of cocaine base, attributable to Defendant.

**(2) Specific Offense Characteristics:** The parties do not agree to the application of any Specific Offense Characteristic.

#### b. Chapter 3 Adjustments:

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government

receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

**c. Other Adjustment(s) and Disputed Adjustments:** None.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 29, unless defendant is a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**The Department of Justice supports elimination of the powder-to-crack sentencing disparity and therefore the Court may, consistent with the law and current sentencing framework, consider whether the powder-to-crack disparity is warranted in assessing the Section 3553(a) factors. If the cocaine base involved in this case was calculated as powder cocaine, the resulting base and total offense levels would be 24 and 23, respectively.**

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than

Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime

defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future

rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

    a.    Residence located at 8173 Martin Luther King Boulevard, St. Louis, Missouri 63140;
    b.    Residence located at 838 Rolwes Avenue, St. Louis, Missouri 63135;
    c.    2014 Jeep SRT, VIN: 1C4RJFDJ4EC368035, seized at 10307 Forest Brook Ln. apt. G, Olivette, MO 63146, on October 14, 2021;
    d.    2004 Chevrolet SS Pickup VIN: 2GCEK19NX41148932, seized at 2140 Flordawn Dr. apt. 10, Florissant, MO 63031, on October 14, 2021;
    e.    2016 Kenworth, T680 Semi-Tractor, VIN: 1XKYDP9X5GJ121986, seized at 11234 Larimore Rd., St. Louis, MO 63138, on October 14, 2021;
    f.    2016 Utility Trailer for Semi, VS2RA, VIN: 1UYVS2532GU452101, seized at 11234 Larimore Rd., St. Louis, MO 63138, on October 14, 2021;
    g.    FN Herstal, 509, 9mm cal., #GKS0027068, seized at Chambers Rd. & Clairmont Dr., St. Louis, MO 63136, on October 14, 2021;
    h.    Smith & Wesson, M&P, 9mm, #NES1547, seized at 8173 Martin Luther King Blvd., Kinloch, MO 63140
    i.    Sun City Machinery, Stevens 320, 12 gauge shotgun, #140450H, seized from 4925 Beacon Ave., St. Louis, MO 63120
    j.    Davis Industries, D25 Derringer, .25 cal., #360829, seized from 4925 Beacon Ave., St. Louis, MO 63120
    k.    $12,750 seized from 4925 Beacon Ave., St. Louis, MO 63120, on September 4, 2021;
    l.    Glock, 23, 40 cal., #DVK249US, seized from 4033 Cranberry Ln, St. Louis, MO 63121;
    m.    Taurus International, Judge, .45/410 cal., #ABK045509, seized from 10188 Clairmont Dr., St. Louis, MO 63136;
    n.    FN Herstal, Five-Seven, 5.7 cal., #386370100, seized from 10188 Clairmont Dr., St. Louis, MO 63136;
    o.    Unknown Manufacture/Model Rifle, #DB-1811370 10188, seized from Clairmont Dr., St. Louis, MO 63136;
    p.    Carrera Y Astelarra, Shotgun, #20CB-00040 10188, seized from Clairmont Dr., St. Louis, MO 63136;

    q.    Browning, 12ga, Shotgun, #63886, seized from 10188 Clairmont Dr., St. Louis, MO 63136;

    r.    Glock, 40, 10mm, #BATU342, seized from 10537 Repose Dr., St. Louis, MO 63137;

    s.    Savage, 12 gauge sawed off shotgun, Unknown S/N 1149, seized from Reale Ave., St. Louis, MO 63138, October 14, 2021;

    t.    $33,394 U.S. Currency seized from 10307 Forest Brook Ln. apt. G, Olivette, MO 63146, October 14, 2021;

    u.    $1,951.00 U.S. Currency seized from 10416 Duke Dr., St. Louis, MO 63136, October 14, 2021;

    v.    1990 Chevrolet SS 454, VIN: 1GCDC14N7LZ183272, seized from 1002 Hanley Industrial Ct., St. Louis, MO 63144, October 25, 2021;

    w.    2011 Dodge 3500 Flatbed, VIN: 3D73Y4CL6BG621430, seized from 10416 Duke Dr., St. Louis, MO 63136, October 14, 2021;

    x.    Ruger, LCP, .380 cal., #372405801, seized from Chambers Rd. & Chambers Hill Dr., St. Louis, MO 63136, September 21, 2021;

    y.    Assorted and miscellaneous jewelry, clothes, shoes, and bags seized from 10307 Forest Brook Ln. apt. G, Olivette, MO 63146, October 14, 2021; and

    z.    Miscellaneous Magazines and Ammunition.

The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried

by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

14 Sept 2022
Date

GEOFFREY S. OGDEN
Assistant United States Attorney

9-14-22
Date

Larenzo Smith
LARENZO SMITH
Defendant

9/14/22
Date

#47389
BILL EKISS
Attorney for Defendant